# REPORTS.

## GERRISH *v.* CLOUGH.

When the channel of a river has been gradually changing for years, by wearing away the bank on the defendant's side and by adding and forming accretions upon the opposite shore owned by plaintiff, by slow and imperceptible degrees, the channel, as so changed, must be regarded as the rightful and accustomed channel for the time being as between the different parties.

Such accretions become the property of the land owner upon that side of the river and are as much entitled to protection as his original enclosure.

In such case, the defendant may protect his banks from further encroachment by rubbling or other means, provided it do not cause a change in the (then) accustomed channel of the river, to the material and appreciable injury of other riparian owners; but he has no right to build a dam, breakwater, or other obstruction in the stream which will raise the water upon the plaintiff's land or wash the same away.

The questions in regard to the right of a *reasonable use* of the stream, or in regard to *ordinary care and prudence* in erecting such dam or obstruction, do not arise in such case.

THIS is an action on the case for diverting the current of the Merrimack river by means of certain breakwaters and other obstructions, placed in that river, upon the eastern side thereof, by reason of which the current was thrown against the western shore and the plaintiff's land washed away, and he was compelled to rubble his banks to prevent further encroachments.

Upon the trial here, upon the general issue, it appeared that, for many years prior to 1861, the Merrimack river had been encroaching upon the defendant's land on the eastern bank of the river, having at some points worn away quite a number of rods, and sometimes to the extent of six or eight rods in a single year; while, upon the other shore, which was the plaintiff's land, the river receded, and there was a consequent gain to the plaintiff.

To prevent further encroachments, the defendant, about the year 1861, erected on the east side of the river the breakwaters complained of, and has ever since maintained them. The plaintiff contended that these erections changed the current of the river, and threw it upon his land and washed it away; while the defendant contended that it had no such effect, but only served to protect his own banks.

The court instructed the jury that the defendant had the right to protect his banks from further encroachment of the river, by rubbling or other means such as breakwaters, provided it did not cause a change in the accustomed channel of the river, to the material and appreciable in-

jury of other riparian proprietors, but had no right to turn the current of the river so as to throw it over on to the plaintiff's land and wash it away. And that if the channel of the river was gradually changed, by wearing away on one side and increasing on the other, by slow and imperceptible degrees, the channel as so changed must be regarded as the rightful and accustomed channel, as between the parties in respect to ownership on each side. That in respect to such channel, so formed, the defendant had no right to turn it on to plaintiff's land to his material and appreciable injury, but might lawfully prevent further encroachments upon his own land.

To these instructions no objections were made except what is to be implied from the request by the defendant for further instructions, which was as follows :

Instructions asked for by the defendant :

I. The defendant had the right to protect his bank from the encroachment of the river so as to prevent his fields and buildings from being carried away, provided he exercised this right in a reasonable manner and with ordinary care and prudence, considering the value of the property in peril, the rapidity with which the encroachment was made, the sandy and unstable nature of the defendant's bank, and all the circumstances of the case.

II. That whether in the making and maintaining of the protection complained of in this case, he acted reasonably and with ordinary care and prudence, is a question for the jury to determine from all the facts before them.

III. If the jury find the defendant has thus acted, he is not liable.

IV. If the jury find the defendant has thus acted he is not liable, even if the water in the river has resumed its former channel, unless they find that land which the plaintiff then used for agricultural or other purposes has been injured as the result.

V. If the jury find that the river has been rapidly encroaching on the defendant's land ; that four rods and more have been carried away in a single freshet, that six or eight feet in width of his land along his shore have been repeatedly carried away in a single moment of time, and that the entire width of the bed of the river dividing the parties' land has been thrown on the plaintiff's land, and all within twenty years, the defendant would not be liable even if the effect of the protection complained of was to divert the water into the ancient channel, provided it did not overflow any land the plaintiff has used for any such purpose as aforesaid, and only upon the sandy shore.

VI. The defendant had the right, in a proper and reasonable manner, to protect his land against the continuance of the wash, and would not be liable to the plaintiff for any wash of his land resulting from the

defendant's thus confining the flow of the river to its channel at the time.

VII. And the defendant would not be liable to the plaintiff for merely preventing the continued accretion of the plaintiff's land by protecting his own land from the continuance of the wash on it.

The court declined to give the instructions prayed for, except as to the two last paragraphs, and the jury were instructed substantially as therein requested.

The jury having returned a verdict for the plaintiff, the defendant moves for a new trial for alleged error in refusing to give the instructions prayed for.

The questions of law were reserved for the whole court.

*J. H. George*, for plaintiff.

The land formed by accretions became the plaintiff's property and was as much entitled to protection as any other property of the plaintiff. Angell on Tide Waters, p. 256; Angell on Water Courses, secs. 333–53; *Rex* v. *Trafford*, 1 B. & A. 874; *Rix* v. *Johnson*, 5 N. H. 520; *Jones* v. *Soulard*, 24 How. U. S. Rep. 41; *Smith* v. *St. James*, 30 Miss. 290, (9 Jones); *Adams* v. *Frothingham*, 3 Mass. 352; Bouv. Law Dictionary, "Alluvion;" *McCall* v. *Scott*, 2 Casey, Penn. 51.

If the erections of the defendant changed the current of the river and thereby washed away the plaintiff's land, his acts were unreasonable as matter of law, and amply sufficient for the maintenance of this suit.

*Pike*, for defendant, cited and commented on *Rex* v. *Pegham*, 8 B. & C. 355; Angell on Water Courses, sec. 333; *Bassett* v. *Salisbury Co.*, 43 N. H. 569, 577.

SARGENT, J. It is very well settled that land formed on one side of a stream of water by the variations in the channel, caused by the natural flowing of the water therein, belongs to the owner of the land on that side of the stream. These natural accretions are entitled to the same protection when once acquired that the original enclosure would have been. Either party may protect himself against any anticipated change of that kind by rubbling or securing his bank in any way that shall keep the channel in its present location, if he do not thereby injure or raise the water upon his neighbor's land, either above or opposite to him. *Scratton* v. *Brown*, 4 B. & C. 485; *Rex* v. *Lord Yarborough*, 3 B. & C. 91; *Adams* v. *Frothingham*, 3 Mass. 352; *Rex* v. *Trafford*, 1 B. & Ad. 874; *Jones* v. *Soulard*, 24 How. U. S. 41; *Rix* v. *Johnson*, 5 N. H. 520.

It is claimed that the doctrine of reasonable use should come in here, in the use of measures for self-protection, and the case of *Bassett* v. *Salisbury Man. Co.*, 43 N. H. 569, 577, is cited as an authority.

But that case evidently does not apply here. The reasonable use doctrine of that case was applied to percolation where there was no watercourse, and that case has no bearing on this case. The jury were instructed in that case, (p. 571,) that, if there was a watercourse on plaintiff's land, the defendants could not raise the natural level of the water in the watercourse on plaintiff's lot, and so was the decision in *Amoskeag Co.* v. *Goodale*, 46 N. H. 53.

The doctrine of the right of reasonable use is applied to watercourses in a class of cases, as in *Hayes* v. *Waldron*, 44 N. H. 580; but in those cases the question arises between one riparian owner who uses the water of the stream as it passes through his land for some particular purpose, and the riparian owners *below* him on the same stream. This distinction is noted in *Bassett* v. *Salisbury Co.*, 578, where it is said that the views in relation to the right of reasonable use as above noticed, are not necessarily in conflict with the cases which hold that a riparian proprietor *below* has in general no right to raise the water of a stream above its natural level on land of a riparian proprietor *above*.

This doctrine of reasonable use as applied to watercourses, is applied, so far as we know, only to a *use* of the water in some ordinary and common sense. But in this case, defendant made no use of the water on his land, but was simply trying to prevent the water from destroying his land. Suppose the defendant owned the plaintiff's land and (owning on both banks) he should build a dam across the river to prevent the river's washing away his bank, and should thereby flow a piece of plaintiff's land up the river, he would clearly be liable, according to *Amoskeag Co.* v. *Goodale*, and all the authorities. It could make no difference whether he built the dam to protect his land or saw logs.

Whatever his object he would have no right to raise the level of the river on plaintiff's land up stream. The doctrine of reasonable use does not apply to a dam raising the height of the water above the dam. Now the plaintiff's breakwater was a dam or in the nature of a dam. It makes no difference that it did not extend across the river. Many dams made for use extend only part way across the stream. It is immaterial whether the dam be long or short, whether it be a breakwater or any other obstruction. Its form, character and extent are of no account if it raises the height of the river on land of others above the obstruction. Suppose in clearing his land of stones the plaintiff dumps them into the river to get rid of them, thereby filling up and obstructing the channel of the river and thus raises the water on land of others, he would be liable, and there would be no question of reasonable use, nor would it make any difference whether the land flowed were ten rods above the obstruction or ten feet or one foot; nor would there be any difference in principle whether defendant owned the land on both sides of the stream at the place of the obstruction and the plaintiff's land that was flowed was ten rods above, or whether defendant owned but one bank of the stream and the plaintiff owned the other bank opposite, which was flowed in consequence of such obstruction.

The general rule would seem to be that whether a riparian owner uses the river or not, he cannot either in the use of the water or in the pur-

suit of any other object, raise the height of the water in the river, on land of others above his obstruction. The instructions to the jury were substantially to that effect. "To turn the current of the river so as to throw it over on to the plaintiff's land" is merely to raise the height of the water above its natural level on the plaintiff's land, by defendant's breakwater operating as a dam or an obstruction.

It would seem that a different rule had sometimes been applied, where the lands border upon the sea or ocean. In *Rex* v. *Pegham*, 8 B. & C. 355, it was held that all owners of lands exposed to the inroads of the sea, might properly erect such works as are necessary to protect their lands, although such works may cause the sea to flow with more force upon the land of another, than it would have done without such protection.

But the distinction between that case and the case of ordinary watercourses, is recognized in England as will be seen by the remarks of *Lord Tenterden, C. J.*, in *Rex* v. *Trafford, supra.* He says, "it is a well known fact that the sea occasionally by some change proceeding from natural and unknown causes makes gradual inroads on parts of a coast, which had been free from its waters for centuries. On such occurrences it has been compared, and justly compared, to a common enemy against which every person may defend himself as he can, but this is perfectly different from an occasional course of superabundant inland water," &c.

In regard to ordinary watercourses, it seems well settled that a riparian proprietor, for his own protection or convenience, has no right to build anything which in times of ordinary flood will throw the water on the grounds of another proprietor so as to overflow and injure them. One may protect his own property; but "though the river threatens to change its channel and to encroach upon your land, you cannot protect yourself to the prejudice of the opposite proprietor." Angell on Water Courses, sec. 330–34, and cases cited.

We think the instructions were correct, and there must be
*Judgment on the verdict.*